G. W. SAX et al., Appellants, v. MARY J. MCCORMICK et al., Appellees.

MECHANICS' LIEN: Extent of Lien—Existing Equities—Purchaser
1    at Foreclosure. A mechanics' lien and the title acquired under foreclosure thereof are subject to the equities relating to boundary lines existing between the lien debtor and an adjoining landowner.

MECHANICS' LIEN: Foreclosure—Notice of Outstanding Equities.
2    A purchaser under the foreclosure of a mechanics' lien is charged with notice of the territorial limitations of the defendant in foreclosure:
      (a)  By reason of the fact that the lands of the defendant in foreclosure are fenced on all sides;
      (b)  By the fact that an adjoining landowner is in possession of the land up to said fences; and
      (c)  By the fact that the defendant in foreclosure exercised no acts of ownership over the land outside said fences.

*Appeal from Davis District Court.*—C. W. VERMILION, Judge.

TUESDAY, APRIL 3, 1917.

THIS case involves a controversy over a line fence. Opinion states the facts. Decree for the defendants in the court below. Plaintiffs appeal.—*Affirmed.*

*Payne & Goodson,* for appellants.

*T. P. Bence,* for appellees.

GAYNOR, C. J.—This action involves a
1. Mechanics'
   Lien: extent of
   lien: existing
   equities: pur-
   chaser at fore-
   closure.
controversy over a fence erected by the
plaintiffs on a line claimed by them to be
the dividing line between their property and
the property owned by the defendants on the
south.   It appears that this fence was erected by the plain-
tiffs after they acquired ownership under a sheriff's deed
dated October 9, 1909.   The plaintiffs claim that, at the
time of the erection of the fence, the line of the fence was
the true south boundary line of the land purchased by them.
It appears that the defendants owned and occupied the land
south of the line in controversy.   It appears that the de-
fendants also at one time owned the land now claimed by
the plaintiffs, and, on the 23d day of November, 1903,
caused the same to be platted as follows: "Subdivision of
irregular survey of Lot 2 in Northeast Southeast 34—69—
14.

"The above is a plat of lots surveyed November 21,
1903, in Lot 3, platted in the NE¼ SE¼ Sec. 34—69—14,
West P. M., for Mrs. McCormick, Lot A commencing at
southwest corner of Lot 2, east 135 feet, south 75 feet, west
165 feet, thence in a northeasterly direction along middle of
the road, as now located, to place of beginning.   Lot B com-
mences at southwest corner of Lot A, thence south 22.8 rods,

east 36.5 rods, north 27.35 rods to south line of Lot 2, west 26.5 rods to northeast corner of Lot A, south 75 feet, west 165 feet to place of beginning."

After this plat was recorded, the McCormicks, defendants, made a deed of conveyance to A. J. and Elmer Clark, as follows: Lot B of the subdivision of Lot 3 in the irregular survey of the NW¼ SE¼, Section 24, Township 69, Range 14 West.

It appears that thereafter the Clarks purchased lumber from the plaintiffs on credit for the erection of a building on said lot. This lumber was not paid for, and the plaintiffs filed a mechanics' lien on December 22, 1905, and thereafter an action was brought to foreclose the lien, and a decree entered on the 8th day of August, 1908, and a sheriff's deed made to the plaintiffs, describing the land as the same appears in the deed to the Clarks and in the plat hereinbefore set out.

At the time the Clarks purchased from the McCormicks, there was a fence running east and west, 7.35 rods, north of the fence in controversy. This fence had been there for over 30 years. South of this fence, the McCormicks had an orchard at one time, but it appears that much of the land south of this old fence was in cultivation at the time of the sale to the Clarks; that, after the sale to the Clarks, the McCormicks continued to occupy and use the land up to the old fence on the north; that the Clarks, when they took possession, understood that the south line of the land purchased by them from the McCormicks was the old line fence. When they took possession, they occupied only to the old line fence. A fence enclosed this land with a fence built on the east of the land purchased by them, joining it to the old line fence. The land purchased by the Clarks from the McCormicks had, prior to that time, been used and known as the brick yard property. It was the brick yard property that the Clarks intended to purchase. It was the brick yard

property that the defendants supposed they were selling to
the Clarks. The Clarks never claimed south of the old line
fence. The brick yard property was all north. The fence
was there when the Clarks purchased. The old fence was
there at the time the plaintiffs acquired their deed under the
foreclosure of their mechanics'· lien, and remained there
until it was removed by the plaintiffs after their purchase
to the point 7.35 rods south of the old line fence.

We think it fairly appears from this record that the
old line fence was the south line of the land actually pur-
chased by the Clarks from the defendants; that it was un-
derstood that the Clarks purchased nothing from the de-
fendants south of the old line fence; that the five acres con-
veyed to them by the deed were to be made up of land north
of this old line fence extending eastward; that the sur-
veyor, in making the figures that appear upon the plat, ex-
tended the land farther south than was contemplated by the
parties, and across the old line fence, to the extent of 7.35
rods.

The deed from the McCormicks to the Clarks was dated
November 23, 1903. The consideration paid was $600.
Plaintiffs' claim for a mechanics' lien was filed December
22, 1905. The first item for material on which the mechan-
ics' lien was based was furnished the 7th of March, 1905.
From the date of the deed to the Clarks and ever after-
wards, until plaintiffs undertook to remove this fence, the
defendants, the McCormicks, occupied up to the old orchard
fence· as their north line. The Clarks never took possession
under their deed from the McCormicks to any land south of
the old line fence, nor did they claim any right to take any
land south of the old line fence. Upon this trial, the Clarks
conceded that they purchased only land north of the old line
fence. The defendants had possession of and were claim-
ing up to the old line fence as their north line, at the time
plaintiffs undertook to remove the fence to a point south of
the old line fence.

It is apparent that the surveyor, in making the plat of Lot B, extended the line too far south. It is apparent that it should not have extended farther south than the old line fence; that, by mistake, the surveyor, in making the plat, extended it about 7.35 rods south of the old line fence. The plaintiffs claim under their sheriff's deed conveying to them Lot B, as shown by the plat. The south line of Lot B, as shown by the plat, would be 7.35 rods south of the old orchard line. The defendants claim that, inasmuch as the plaintiffs claim through the Clarks, and inasmuch as the Clarks purchased and secured possession only of the land north of the old line, the defendants, in filing their claim for mechanics' lien against the Clarks, acquired only a lien upon such interest as the Clarks had in the land; that they acquired, by the filing of the lien and the foreclosure and the deed, no greater rights than the Clarks had, and, inasmuch as the Clarks' rights were all confined to territory north of the old fence line, and inasmuch as the defendants acquired only territory owned by the Clarks, they were trespassers and wrongdoers in attempting to move the old line south to the point where the new fence was erected.

This controversy involves a consideration of what rights a mechanics' lien holder by foreclosure and sale acquires in the property of his debtor. We have no case in this state directly in point on this question. In *Fletcher v. Kelly*, 88 Iowa 475, it is said:

"It will be observed that the statute only protects subsequent purchasers for value, and without notice. * * * We think that a mechanics' lien holder does not come within the protection afforded by the statute. He is not a purchaser, not more so than a judgment creditor, and hence must, at his peril, take notice of all liens and incumbrances, whether recorded or not. His lien attaches to the real estate, subject to all outstanding equities, whether he had

notice of them or not, except in so far as this rule may be modified by the mechanics' lien statutes."

See *Tomlinson v. Golden*, 157 Iowa 237.

It is apparent that on the foreclosure and sale they acquired only the interest to which their lien attached. If the Clarks did not own the land south of this fence, then, by the filing of their claim for a lien, they acquired no lien upon any land south of the old line fence. Our statute provides that a mechanics' lien shall take precedence over other liens and encumbrances on the *building,* and the land upon which it is situated, made subsequent to the commencement of the building; that the mechanics' lien takes precedence over other liens or encumbrances on the building, but not upon the land, except as to those liens created subsequent to the commencement. A discretion is lodged in the court to order the building sold separately under execution. See Section 3095, Code, 1897.

2. MECHANICS' LIEN: foreclosure: notice of outstanding equities.
The plaintiffs were charged with notice of the Clarks' territorial limitations by reason of the fact that the Clarks' land was fenced in on all sides before the plaintiffs acquired any interest or claim against the land. They were charged with notice by the fact that the defendants were in possession of all the land south of the old line fence. They were charged with notice that the Clarks were not exercising any acts of ownership over any land south of the old line fence. We cannot believe that they were deceived by the descriptions in the deed as to the territorial limitations of the Clark property. If plaintiffs were shown to be innocent purchasers without notice, relying upon the plat and the Clark deed as a basis for their right, a different question might arise. The physical conditions were such, at the time the plaintiffs acquired their rights, as to put them on inquiry, which, if honestly pursued, would have brought them to a knowledge of the facts

as they appear in this record. We think the equities are with the defendants, and that the decree of the district court holding the old fence line as the true dividing line between the parties is sustained by the record, although we do not think there was sufficient evidence to justify the court in granting a reformation of the deed between the defendants and the Clarks, who are not parties to this suit.

We think the case ought, therefore, to be affirmed.—*Affirmed.*

LADD, EVANS and SALINGER, JJ., concur.