# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 08-6019

———

In re:                                          *
                                                *
Tony W. Coleman, doing business                 *
as Superior Investigation Solutions,            *
LLC; Stephanie A. Coleman,                      *
                                                *   Appeal from the United States
         Debtors.                               *   Bankruptcy Court for the Western
                                                *   District of Missouri
Green Tree Servicing, LLC,                      *
                                                *
         Creditor-Appellant,                    *
                                                *
              v.                                *
                                                *
Tony W. Coleman; Stephanie A.                   *
Coleman,                                        *
                                                *
         Debtors-Appellees.                     *
                                                *

———

Submitted: August 8, 2008
Filed: August 25, 2008

———

Before KRESSEL, Chief Judge, SCHERMER and MAHONEY, Bankruptcy Judges.

———

KRESSEL, Chief Judge.

Green Tree Servicing, LLC appeals the bankruptcy court's[1] order of April 22, 2008, confirming Tony W. and Stephanie A. Coleman's chapter 13 plan. Because we agree with the bankruptcy court that the debtor could cram down Green Tree's secured claim, we affirm.

## BACKGROUND

Green Tree holds a secured claim in a 1996 Chandaleur 16 x 80 manufactured home which is owned by Stephanie A. Coleman. She and Tony use the home as their residence, located on 30- 36 acres in Jasper County, Missouri.

The Colemans' original chapter 13 plan proposed to bifurcate the manufactured home claim, limiting the secured claim to the value of the mobile home, which the Colemans' plan listed as $6,000.00 and treating the remainder as unsecured. The original plan proposed to pay $100.00 per month to Green Tree.

Green Tree objected to the Colemans' plan, arguing primarily that its claim was not subject to cramdown and secondarily that the debtors had undervalued its collateral and thus were not paying the secured claim in full. The bankruptcy court overruled Green Tree's objection in part, finding that it was subject to cramdown, but ruling that the debtors had undervalued its collateral. *In re Coleman*, 373 B.R. 907, 914 (Bankr. W.D. Mo. 2007). The bankruptcy court valued the home at $14,972.58 and directed the Colemans to file a new plan treating the secured claim at $14,972.58. *Id.* Green Tree appealed.

---

[1]The Honorable Arthur B. Federman, United States Bankruptcy Judge for the Western District of Missouri.

We dismissed Green Tree's appeal as interlocutory. The debtors then filed an amended plan and the bankruptcy court confirmed it. The Colemans' amended chapter 13 plan values the manufactured home at $14,972.58 but, like the original plan, it bifurcates the claim, limiting the secured claim to the value of the mobile home and treating the remainder as unsecured. Under the confirmed plan, the Colemans will pay Green Tree $250.00 for 60 months. Green Tree appealed again. The confirmation order is a final appealable order.

## Standard of Review

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *DeBold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006); *In re Vondall*, 364 B.R. 668, 670 (B.A.P. 8th Cir. 2007). We review issues committed to the bankruptcy's court's discretion for an abuse of that discretion. *In re Neal*, 461 F.3d 1048, 1055 (8th Cir. 2006). "Statutory interpretation is a question of law that [appellate courts] review de novo." *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 537 (8th Cir. 2006).

## DISCUSSION

The sole issue is a legal one which we review de novo. May a chapter 13 plan modify the rights of a creditor holding a security interest in a manufactured home? Appellant Green Tree contends that the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act expanded the scope of the anti-modification provision in 11 U.S.C. § 1322(b)(2) to include manufactured homes when it defined "debtor's principal residence" and specifically included manufactured homes. Green Tree argues that because Congress defined "debtor's principal residence" in 11 U.S.C. § 101(13A)(A)(B) to include manufactured homes, "all mobile and manufactured

homes, regardless of their state law classification as real or personal property, are protected by the anti-modification provision of § 1322(b)(2)." Appellant's Brief at 4. We join the majority[2] of courts that have considered the issue, and hold that §

[2]*E.g., In re Davis*, 386 B.R. 182 (B.A.P. 6th Cir. 2008); *In re Shepherd*, 381 B.R. 675 (E.D. Tenn. 2008); *In re Lara*, No. 07-60188, 2008 WL 961892 (Bankr. S.D. Tex. Apr. 8, 2008); *Kinder v. Vanderbilt Mortg. and Fin.*, No. 1:07-cv-564, 2008 WL 2230694 (S.D. Ohio May 28, 2008); *In re Williamson*, 387 B.R. 914 (Bankr. M.D. Ga. 2008); *In re Gearheart,* No. 07-70232, 2007 WL 4463342 (E.D. Ky. Dec. 14, 2007); *In re Logan,* No. 07-70212, 2007 WL 4414784 (Bankr. E.D. Ky. Dec. 14, 2007); *In re Fuller,* No. 07-81703, 2007 WL 3244113 (Bankr. M.D. N.C. Nov. 2, 2007); *In re Oliveira,* 378 B.R. 789 (Bankr. E.D. Tex. 2007); *Herrin v. Green Tree-AL, LLC,* 376 B.R. 316 (S.D. Ala. 2007), *aff'g In re Herrin,* No. 06-12249-WSS-13, 2007 WL 1975573 (Bankr. S.D. Ala. July 3, 2007); *In re Bartolome,* No. 07-10731-DHW, 2007 WL 2774467 (Bankr. M.D. Ala. Sept. 21, 2007); *In re McLain,* 376 B.R. 492 (Bankr. D. S.C. 2007); *In re Manning,* No. BK 07-70190-CMS-13, 2007 WL 2220454 (Bankr. N.D. Ala. Aug. 2, 2007); *In re Cox,* No. 07-60073, 2007 WL 1888186 (Bankr. S.D. Tex. June 29, 2007). *But see In re Shepherd*, 354 B.R. 505 (Bankr. E.D. Tenn. 2006) (holding that the anti-modification provision of 11 U.S.C. § 1322(b) is applicable to a mobile home irrespective of whether the home is attached to the real property on which it sits), rev'd, *In re Shepherd*, 381 B.R. 675 (E.D. Tenn. 2008) (holding that the definition of "debtor's principal residence" in 11 U.S.C. § 101(13A)(A) does not operate to extend the anti-modification provision of 11 U.S.C. § 1322(b) to structures that are not real property); *In re Fells,* No. 07-80559, 2007 WL 3120113 (Bankr. W.D. La. Oct. 23, 2007) (holding that a lien on the debtor's mobile home which was the debtor's principal residence as defined by 11 U.S.C. § 101(13A)(A) was not subject to modification under 11 U.S.C. § 1322(b)); *HSBC v. Lunger (In re Lunger),* 370 B.R. 649 (Bankr. M.D. Pa. 2007) (holding that because the definition of "debtor's principal residence" in 11 U.S.C. § 101(13A) includes "incidental property," a secured interest in incidental property cannot be modified under 11 U.S.C. § 1322(b)); *In re Davis,* 373 B.R. 46 (Bankr. S.D. Ohio 2007) (holding that the definition of "debtor's principal residence" in 11 U.S.C. § 101(13A)(A)

1322(b)(2) is unambiguous and does not prohibit modification of a manufactured home security interest where that interest is not real property.

## The plain language of 11 U.S.C. § 1322(b)(2) clearly limits the anti-modification provision to a security interest in real property that is also the debtor's principal residence.

Statutory interpretation begins with the language of the statute itself. We "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-254, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). When a statute's plain meaning is unambiguous, "judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). "[I]n the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983), quoting from *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), quoting from *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

11 U.S.C. § 1322(b)(2) states that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real

protects holder of secured claim in a mobile home that is debtor's principal residence from modification under 11 U.S.C. § 1322(b)), rev'd, *In re Davis*, 386 B.R. 182 (B.A.P. 6th Cir. 2008) (holding that the addition of a definition of "debtor's principal residence" in 11 U.S.C. § 101(13A)(A) did not change the scope of the 11 U.S.C. § 1322(b) anti-modification provision and § 1322(b) remains applicable only to real property).

property that is the debtor's principal residence." A plain reading requires that in order for the anti-modification provision to apply, the claim must *both* be secured only by an interest "in real property" *and further,* that the real property must be the "debtor's principal residence." BAPCPA defines "debtor's principal residence" as "a residential structure, including incidental property, without regard to whether that structure is attached to real property." 11 U.S.C. § 101(13A)(A). Further, it specifies that "debtor's principal residence" "includes an individual condominium or cooperative unit, a mobile or manufactured home, or a trailer." 11 U.S.C. § 101(13A)(B). No one disputes that the manufactured home is the debtors' principal residence. Green Tree argues that the only logical reading of § 1322(b)(2) is that all manufactured and mobile homes are exempt from cramdown, regardless of their state law classification as real or personal property. However, Green Tree's reading is contrary to the plain meaning of the statute.

In § 1322(b)(2), the word "that" functions as a restrictive pronoun; it limits the application of the anti-modification provision to types of secured interests in real property that are used by the debtor as a principal residence. The result is that the determination of whether a security interest in a debtor's principal residence may be subject to cramdown turns on whether that residence is real or personal property. Green Tree argues that by adding a definition of "debtor's principal residence" in § 101(13A)(B), Congress eliminated the requirement under § 1322(b) that in order to be exempt from cramdown, the secured interest must be in real property. Congress could have easily written the anti-modification provision as Greentree suggests but did not. *See Herrin v. Green Tree–AL, LLC (In re Herrin)*, 376 B.R. 316 (S.D. Ala. 2007) ("had Congress truly wanted to remove the 'real property' requirement, it could have done so with exceptional ease by merely redacting the word 'real' or adding the words 'or personal' in Section 1322(b)(2)"). Therefore, we hold that § 1322(b)(2) is unambiguous and does not prohibit modification of a manufactured home security interest where that interest is not real property.

6

## Consideration of the legislative history would not change the interpretation of § 1322(b)(2).

Because we hold that Section 1322(b)(2) is unambiguous and does not prohibit modification of a manufactured home security interest where that interest is not real property, we do not find it necessary to consider the legislative history for evidence of what Congress might have meant. However, the outcome would be the same even if we consider the legislative history of BAPCPA. As Green Tree concedes in its brief, the legislative history is minimal. The only support Green Tree offers is found in the April 8, 2005, House of Representatives Judiciary Report:

> Sec. 306. Giving Secured Creditors Fair Treatment in Chapter 13. […] Section 306(c) (1) amends section 101 of the Bankruptcy Code to define the term "debtor's principal residence" as a residential structure (including incidental property) without regard to whether or not such structure is attached to real property. The term includes an individual condominium or cooperative unit as well as a mobile or manufactured home, or a trailer.

H.R. Rep. No. 109-31, at 72 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 140. The report simply reiterates that the term "debtor's principal residence" has been defined to include manufactured homes; it does not indicate, explicitly or implicitly, that the anti-modification provision of § 1322(b)(2) must be extended all security interests in manufactured homes, whether or not state law treats them as realty or personalty. With such a scant record, we see no reason to question the plain meaning of § 1322(b)(2).

**State law controls the determination of whether a debtor's principal residence is real or personal property.**

Green Tree argues that the application of state law in the present case would violate the Supremacy Clause and the Bankruptcy Clause of the Constitution, and wreak havoc on the uniformity of bankruptcy proceedings by requiring bankruptcy courts "to look to the mobile home classification statutes from each state to determine the rights of the parties in a mobile home lending situation, potentially leading to fifty (50) different interpretations of the statutes involved." Appellant's Brief at 16. Green Tree's analysis directly conflicts with a central tenet of bankruptcy law that state law creates property rights and that those rights are to be respected in bankruptcy, even though the results may vary among the states. *Butner v. United States,* 440 U.S. 48, 54-55 & n. 9, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (determining property interests by reference to state law does not violate the Bankruptcy Clause); *Stellwagen v. Clum,* 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918) ("the Bankruptcy Act recognizes and enforces the laws of the states […]. Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the act is not alike in all the states"); *Sturges v. Crowninshield,* 17 U.S. 122, 128, 4 Wheat. 122, 4 L.Ed. 529 (1819) ("state laws are thus suspended only to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress").

Green Tree asserts that the plain meaning of the statute creates a conflict with state law. In support, it cites a decision which has been reversed. *In re Shepherd*, 354 B.R. 505 (Bankr. E.D. Tenn. 2006), rev'd, 381 B.R. 675 (E.D. Tenn. 2008) (holding that § 101(13A)(A) "does not alter the requirement that the property in question be real property in order for the anti-modification provision to apply"). We see no conflict between the statute and state law. "In the absence of a controlling federal rule, we generally assume that Congress has 'left the determination of property rights

in assets of a bankrupt's estate to state law,' since such 'property interests are created and defined by state law.'" *Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 329, 113 S.Ct. 2106, 2110 (1993) (quoting *Butner v. U.S.,* 440 U.S. 48, 54-55, 99 S.Ct. 914, 918 (1979)).  The definition of "debtor's principal residence" in 11 U.S.C. § 101(13A)(B) includes manufactured and mobile homes, but is silent as to whether manufactured and mobile homes are real or personal property.  Therefore, we look to the applicable state law to determine whether the debtors' property is real or personal.

## The debtors' manufactured home is personal property under Missouri law.

Lastly, we consider whether the Colemans' manufactured home is "real property" under applicable state law.  Under Missouri law, manufactured and mobile homes are generally classified as personal property but may be converted to real property by both "(1) Attaching the manufactured home to a permanent foundation situated on real estate owned by the manufactured home owner" *and* "(2) The removal or modification of the transporting apparatus including but not limited to wheels, axles and hitches rendering it impractical to reconvert the real property thus created to a manufactured home."  Mo. Rev. Stat § 700.111; *Housley v. Mericle,* 57 S.W.3d 360, 364 (Mo. App. 2001) ("A manufactured home is considered personal property until converted to real property, pursuant to § 700.111."); *In the Estate of Parker*, 25 S.W.3d 611, 615-16 (Mo. App. 2000) ("A person converts his mobile home from personal to real property by causing the mobile home to become a fixture.").  *See also In re Thornton,* 269 B.R. 682, 685 (Bankr. W.D. Mo. 2001) (finding that a manufactured home had been converted to real property, where the manufactured home's wheels and tires had been removed, skirting had been installed, the structure had been placed on blocks, and the structure had been attached to its own well and septic system).

Green Tree does not contend that the Colemans' manufactured home has been legally converted from personal to real property and presented no evidence at the

confirmation hearing on July 25, 2007. Green Tree states generally, "The facts of this case are simple and uncontested." Appellant's Brief at 2.

The only evidence presented to the bankruptcy court was the testimony of Ms. Coleman. *Coleman* at 911. Ms. Coleman testified that she and her husband own the land on which the manufactured home sits. She testified that the wheels had been taken off and bricks put underneath, but that there was no foundation and nothing to secure the home to the land. She testified that the home is only secured to the land by "standard tie downs," which she said are "basically poles that they hammer into the ground." Tr. at 29. She testified that in order to move the home, one would only need to "get a truck, come out there, jack it up, put the wheels back on it and drive it off." *Id*. The bankruptcy court found, based on Ms. Coleman's testimony, that the home had not been permanently attached to the land and therefore was not real estate under Missouri law. *Coleman* at 911. Because the court's finding is supported by the record, we do not disturb it.

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is affirmed.

───────────────────────

10