CRAWFORD-FAYRAM LUMBER COMPANY, Appellee, v. ROSCOE C. MANN et al., Appellants.

**MECHANICS' LIENS:** Priority—Mortgage to Finance Improvement.
1  A mortgage on unimproved land in an amount much in excess of the value of the land, made for the specific purpose of enabling the owner to obtain funds with which to erect, and with which he does erect, an improvement on the land, (1) carries in equity a lien on the entire property, as improved, superior to the mechanic's lien of a claimant who at all times had full knowledge of the purpose of the mortgage, and (2) carries, under the statute (Sec. 3095, Code of 1897), a superior right to the entire proceeds of a sale of the improved property.

**MECHANICS' LIENS:** Foreclosure—Right to Remove Improvement.
2  Principle recognized that the removal from land of a modern residence as ordinarily constructed entails unjustifiable waste.

**CONSTITUTIONAL LAW:** Vested Interest—Curtailing Right of Mort-
3  gagee. Whether a mortgagee of unimproved land may constitutionally be deprived of a lien on future-erected and permanent improvements on the land, *quaere.*

Headnote 1: 40 C. J. p. 295 (Anno.); 41 C. J. p. 485. Headnote 2: 26 C. J. p. 665.

Headnote 1: 18 R. C. L. 956.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

DECEMBER 14, 1926.

REHEARING DENIED APRIL 7, 1927.

Suit in equity for the foreclosure of a mechanic's lien. Other mechanic's lien holders were made parties defendant; likewise, the United States Trust Company, as holder of a prior mortgage. There was a decree apportioning the security. The .United States Trust Company appeals.—*Reversed.*

*Morsman, Maxwell & Haggart* and *Tinley, Mitchell, Ross & Mitchell,* for appellants.

*Kimball, Peterson, Smith & Peterson,* for appellees.

EVANS, J.—I. The original petition of plaintiff was an ordinary petition in foreclosure of a mechanic's lien. It set forth the names of other lien holders, and asked to establish its own lien as prior and superior to all. The various mechanic's lien holders appeared, and filed answers and cross-bills, asking the foreclosure also of their respective liens. The prayer of these cross-bills in each case was a general one, asking for such equitable relief as the court found them entitled to. The United States Trust Company filed its answer and cross-bill, setting up its mortgage of $4,000 as a prior mortgage, and asking its establishment as a prior lien. After the filing of the cross-bill of the United States Trust Company, the plaintiff amended its petition, and set up certain alleged equities, as distinguished from statutory provisions, in resistance to the appellant's claim of priority. We shall consider first the question of equities, as distinguished from purely statutory rights.

The plaintiff averred that, at the time of the taking of the

1. MECHANICS' LIENS: priority: mortgage to finance improvement.

appellant's mortgage, the property included therein was a vacant lot, of the value only of $1,500; that the materials sold by the plaintiff were used in the erection of a dwelling house upon said lot, which was an original and independent structure; that the appellant knew that the vacant lot was worth only $1,500, in that the application for the loan stated such fact; that the prior lien of the appellant, therefore, should be confined to the real estate, and to the extent only of $1,500. The decree found that the structure was original and independent, and was severable from the real estate, but ordered, nevertheless, that the sale should be made of the property as a whole, without severance, and that out of the proceeds of the sale the appellant should have priority to the extent of $1,500, and no more, and that the plaintiff should take priority of the surplus above $1,500.

The evidence discloses that the lot in question was a vacant lot in Forest Park, which was a locality then being developed as a residence district; that the enterprise was being largely promoted by one Wallace; that many residences were being erected, pursuant to a plan of financing each property; that Mann, the owner of the property, made application for, and obtained, a loan of $4,000 for the purpose of financing the erection of a dwelling house thereon; that he made written application to the appellant company for a loan for such purpose; that such application contained the following representation:

"Cash value of the property 76.7 feet frontage at $19.50 per foot $1,500.00

"Cost of buildings $7,500.00

"Total cost $9,000.00

"Rental value per month $75.00. Property would sell today for $10,000. The buildings will be insured against fire for $7,000.00, against tornado for $7,000.00."

The proceeds of the loan were placed in the hands of Wallace, and were to be paid out by Wallace to the various contractors who contributed to the improvement. Wallace paid out the funds to the different contractors, upon the respective orders of Mann. This plan, which was in general use in the development of Forest Park, was known to the plaintiff Lumber Company, and it conformed itself thereto in collecting its pay, from time to time, upon its contracts. It furnished the material for many of the houses thus erected under like plan. It admits that, at

the time it contracted with Mann to furnish the material involved herein, it was definitely informed by Mann that he was
mortgaging the property for the purpose of financing the erection of the dwelling. It therefore had not only the constructive
notice of the mortgage furnished by the record, but it had actual
notice of the mortgage and the purpose for which the loan was
being negotiated.

In confining the priority of the appellant to the value of
the vacant lot, the trial court wholly overlooked this feature of
the evidence. The facts here set forth create an equity in favor
of the appellant. Almost exactly such a situation was met by
this court in *Kiene v. Hodge*, 90 Iowa 212. The syllabus of the
opinion in such case is as follows:

"Where plaintiff takes a mortgage on a lot which is insufficient security for it, the money to be used to erect a building, and the loan is paid out, among others, to the lienors as the
work progresses, the first material being furnished when plaintiff's mortgage was already of record, the mortgage takes precedence over the mechanic's lien as to both lot and building."

The effect of such holding is to say, in a constructive sense,
and as against the owner of the property and all others having
notice of the arrangement, that the mortgage of appellant attached not only to the vacant lot, but likewise and equally to the
building which the mortgagor proposed to erect thereon. Under
this rule, there was no more reason for denying the appellant's
lien upon the house than for denying it upon the lot. The statute
in force at the time of the rendition of this opinion was Chapter
100 of the Acts of the Sixteenth General Assembly, which did not
differ materially from Section 3095, Code of 1897, which governs the case before us. It is clear from this record that the
mortgagee would not have accepted the vacant lot as security for
a $4,000 mortgage. The equitable principle herein involved has
been recognized by us in other cases. For instance, in *Hunt
Hdw. Co. v. Herzoff*, 196 Iowa 715, the owner of real estate held
an equitable title under a forfeitable contract. A mechanic's lien
was filed, as against the equitable owner. We held that the forfeiture of the contract wholly divested the lien. To quote the
syllabus:

"The legal forfeiture by an owner of real property of a
contract for a deed cancels the lien of a materialman on the real

property for improvements placed thereon by the purchaser; and especially is this true when the materialman knew that the purchaser had purchased the property under a forfeitable contract.''

We held to like effect in *Joyce Lbr. Co. v. Wick,* 200 Iowa 796. To quote the syllabus:

''A mechanics' lien may not be established against the land of a vendor or against a building thereon of which the improvement became an integral part, when the vendor is not, directly or indirectly, a party to such improvement.''

The same equitable principle being applied to the case at bar, the mortgagee was necessarily entitled to maintain his priority upon the entire property, with its dwelling house, for the full amount of the mortgage.

II. Apart from what is said in the foregoing division, the case is governed by the provisions of Section 3095, Code of 1897. The decree found that the structure was an original and inde-

2. MECHANICS' LIENS: foreclosure: right to remove improvement.

pendent structure and that it could be severed without material injury to the value of the property. Nevertheless, it ordered that the sale be made not separately, but of the property as a whole. We cannot agree with the finding of the decree that the improvement could be separated from the realty without substantial injury to its value. The evidence for the plaintiff itself disclosed that it would cost $1,000 to move the superstructure from the foundation; that the foundation was worth $500. The improvements contained in the foundation pertaining to the plumbing and to the heating and to the water system and to the sewerage appear to have cost more than $500. This would indicate a destruction of value to the amount of $2,000, and would present a clear case of waste. There is a sense, of course, in which it may be said that every frame building is an independent structure, and can be removed from its foundation and carried off. It is only in such sense that it could be said that the structure involved herein could be removed without substantial injury to its value. If such were the intent of the statute, it could have been so stated more readily than to employ the language actually used. Where a valuable dwelling is constructed according to modern methods, and connected with the real estate by an improved basement, and equipped with the

modern conveniences of water, heat, gas, and sewerage, with valuable plumbing extending from basement upward, it becomes almost unavoidably an integral part of the real estate, and cannot be removed without destruction of a substantial part of its value. Such has been our invariable holding, unless there be an exception in the single case of *Tower v. Moore,* 104 Iowa 345. No description of the building is contained in that case, but it seems to have been conceded that it was removable without serious injury to its value. In the older days, the ambulatory building was not uncommon.

If that question be passed, however, the decree herein did not order a separate sale, but ordered the sale of the whole. The complaint is directed to the distribution of the proceeds. The decree took no account of the last sentence in Section 3095. The appellee contends that such sentence has no application to a case where the improvement is an independent building; but we have repeatedly construed that provision of the statute otherwise. It was so construed in *Leach v. Minick,* 106 Iowa 437. In that case we said:

"The materials which plaintiff furnished were for the erection of an original, independent building, which the court found, and the parties concede, should not be separately sold. If it were not for the concluding sentence of said fourth paragraph [Section 3095], there would be no question but that plaintiff is entitled to a lien upon the building prior to the mortgage of Wengert and to the lien of Price & Smith, and that in that case the court should take an account, ascertain the separate values, 'and distribute the proceeds of sale so as to secure to the prior mortgage, or other lien, priority upon the land, and to the mechanic's lien priority upon the building.' "

The opinion in this case followed our previous decisions to the same effect. In *Green v. Saxton,* 196 Iowa 1086, we had the question before us, and reviewed all our prior cases. We held in that case that the last sentence of Section 3095 was controlling. In *Taber Lbr. Co. v. Converse,* 197 Iowa 1287, we said:

"We have had before us for construction in several cases the above quoted paragraph of Code Section 3095, and have held, in substance and effect, that, where the building has become a part of the realty, if the premises do not sell for more

than enough to pay the prior mortgages, an accounting or distribution of the proceeds of the sale is not required; and the entire proceeds are to be applied in satisfaction of the prior liens. *German Bank v. Schloth,* 59 Iowa 316; *Tower v. Moore,* 104 Iowa 345; *Leach v. Minick,* 106 Iowa 437.''

We have reaffirmed the same holding in *Marker v. Davis,* 200 Iowa 446.

The appellee relies for its authority upon *Tower v. Moore,* 104 Iowa 345. Unless that case is to be distinguished by the concession in the record that the building was removable without damage to its value, then the case is quite out of line with all our other decisions on the subject, and would be deemed overruled by the subsequent decisions.

The construction of Section 3095 contended for by appellee would present a serious question as to the legislative power to impair the vested rights of a mortgagee under his mortgage. A

**3. Constitutional Law: vested interest: curtailing right of mortgagee.**

mechanic's lien arises pursuant to a contract between the mortgagor-owner and the materialman. The mortgagee is not a party to such contract. The vested right of the mortgagee attaches to the real estate and to every improvement that becomes an integral part thereof. To hold that a mortgagor may subsequently enter into contracts with other lien holders which will bedraggle his security and involve him in complications of accountings and pro ratas, trenches close upon the limitations of legislative power. The statute in question pertains not to police power, nor to public right or interest, but deals solely with private rights arising out of voluntary contracts.

We reach the conclusion that the appellant-mortgagee was entitled to maintain its priority of lien upon the whole property.

The decree below must be reversed accordingly.—*Reversed.*

De Graff, C. J., and Albert and Morling, JJ., concur.