CORNELL COLLEGE, Appellant, v. ARTHUR M. CRAIN et al., Appellees.

No. 40515.

APRIL 10, 1931.

*E. A. Johnson* and *William W. Crissman,* for appellant.

*George Wilson* and *Crissman, Linville & Bleakley,* for appellees.

STEVENS, J.—Prior to and on July 10, 1929, appellee was the owner of a certain tract of land in Linn County, Iowa, upon which appellant held a second mortgage. On the above date, appellee conveyed the mortgaged premises to appellant, in payment and satisfaction of such mortgage indebtedness, by warranty deed, containing the usual covenants, except the encumbrance of a prior mortgage, and without other reservation than the right to occupy the premises until March 1, 1930, and to have the rents, etc.

The second mortgage held by appellant was executed to it by appellee. Subsequent to the execution of the aforesaid second mortgage to appellant, appellee erected a granary and corncrib on the mortgaged premises. The granary is 14 x 10 feet, 8 feet high. It has a shingle roof, is sided with plain board sheeting, and rests upon the ground, without other foundation. This building is constructed with three sills or skids, extending lengthwise, to which the floor is attached. It has a capacity of 350 to 400 bushels of grain. The corncrib is 12 x 5 feet, 10 feet high, and has a shed roof. It is also constructed on skids or sills, similar to those used in the granary. These skids or sills are 8 x 12 inches, 12 feet long. The floor is nailed to the sills and to a third sill in the center, of similar dimension. The capacity of this building is about 300 bushels of corn. A third building or structure involved in this controversy is referred to as a hog house, or farrowing pens. This structure is also built upon skids, and without other foundation. The granary and crib were constructed on the premises by appellee, but the hog house was purchased by him, and moved, by the use of a team of horses, onto the mortgaged premises. This building has been moved from place to place on the premises, to meet the convenience of appellee.

It was the contention of appellee in the court below, and is his contention in this court, that all of the buildings described above were personal property, and did not pass to appellant by the conveyance of the premises thereto. The question thus presented is frequently difficult of precise and satisfactory solution. The rules established by our decisions, upon the basis of

which the claims of the parties must be adjusted, are simple enough. The application thereof to particular cases is not so easy.

It has been said, and many times repeated, by this court that the true criterion of a fixture is the united application of three requisites, as follows:

"1. Actual annexation to the realty, or something appurtenant thereto. 2. Application to the use or purpose to which that part of the realty with which it is connected is appropriated. 3. The intention of the party making the annexation to make a permanent accession to the freehold." *Ottumwa Woolen Mill Co. v. Hawley*, 44 Iowa 57, 62.

See, also, *Thomson v. Smith*, 111 Iowa 718; *Bullard v. Hopkins*, 128 Iowa 703; *State Sec. Bank v. Hoskins*, 130 Iowa 339; *Rahm v. Domayer*, 137 Iowa 18; *Fehleisen v. Quinn*, 182 Iowa 1283; *Goldthorp v. Keenan*, 192 Iowa 22; *O'Bryon v. Weatherly*, 201 Iowa 190; *Speer v. Donald*, 201 Iowa 569.

No doubt, this court has made the intention of the party annexing the improvement the paramount consideration in determining whether same is a fixture or a permanent part of the realty. The method of attachment to the soil is of significance, but not necessarily a controlling factor. The property involved in *Rahm v. Domayer*, supra, was certain finishing lumber, doors, and transoms, placed by the defendant in an unfinished building, to be used in completing the same. The court held that, notwithstanding the fact that they were not attached to the building, they were clearly and definitely intended to be used therein, as a permanent part thereof, and, therefore, were a part of the realty. Emphasis has also been given to the manner in which the structure is attached to the soil, if at all. We said, in *O'Bryon v. Weatherly*, and other cases cited supra, that the method of attachment is of little controlling importance, although, by force of gravity alone, if the structure is intended to be, and is, properly a part of the realty, it becomes such. Therefore, a physical attachment of the structure to the soil or to an appurtenance thereto is not essential to make the structure a part of the realty. The method of attachment may, however, and under some circumstances does, quite conclusively establish the intention. Illustrations will be found in the cases.

cited. See particularly on this point *Thomson v. Smith*, supra; *Ottumwa Woolen Mill Co. v. Hawley*, supra; *Fehleisen v. Quinn*, supra.

Appellee in this case testified that the crib and granary were constructed on skids so that he could move them about on the premises, and also for the further reason that he thought probably he would lose the farm, and that, if he did, he could, by this method of construction, lay claim to the buildings.

It will be observed that appellee, at the time the buildings were erected by him on the premises, was the owner and occupier thereof. The buildings were essential and well suited to the purposes for which they were erected, and were appropriate to the acreage involved. The intention referred to in the decisions must be something more than the secret purpose on the part of the owner to remove the same in the event that a contingency shall arise by which title to the soil is lost. The so-called skids under the granary and crib were beveled at one end, but the buildings had not been moved. Appellee testified that they were referred to in the negotiations leading up to the execution of the deed. The record, however, is wholly silent as to anything that was said by the parties. Much emphasis must be given to the practical necessity therefor and the use to be made of the buildings on the premises. They were essential to the proper conduct and operation of the farm. The obvious intention of appellee, upon his own interpretation thereof, was to occupy and maintain the buildings upon the premises as permanent structures unless he lost the farm by foreclosure of the mortgages. It is true that this court in *Rahm v. Domayer*, supra, quoted from the text of Cyc. to the effect that structures attached to realty in no other way than by their own weight are, *prima facie*, personalty, and not a part of the realty. The court in that case, however, as stated, held that finishing lumber and doors placed in an unfinished building for the purpose of making them a permanent part thereof were realty. The rule as stated in Cyc. is of little specific aid in determining the question, since, under the uniform holding of this court, the intention is paramount, and really the determining factor. It would seem quite obvious that the crib and granary, although not resting upon a permanent foundation, or otherwise more securely attached to the soil, are a permanent part of the realty.

So far as the hog house or farrowing pens are concerned, the situation as between the grantor and grantee is not different. It is true that this building could be moved about the premises, but that it was intended to be a permanent part thereof we have no doubt. We perceive no substantial basis for distinction at this point.

It follows that the judgment is reversed.—*Reversed.*

FAVILLE, C. J., and EVANS, ALBERT, MORLING, KINDIG, WAGNER, and GRIMM, JJ., concur.