**Henry Edsel FORD, Appellee,**

v.

**William E. VENARD, Appellant.**

**No. 69416.**

Supreme Court of Iowa.

Nov. 23, 1983.

Robert Schell, Council Bluffs, for appellant.

Richard D. Crotty, Council Bluffs, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK and McGIVERIN, JJ.

HARRIS, Justice.

The question here is whether a mobile home became a part of the realty where it is situated. The trial court found it did and we agree.

This is an equitable action seeking a permanent injunction to restrain defendant from enforcing a judgment. On our *de novo* review we find the facts to be as follows. In 1973 Norman Van Sickle moved his double-wide mobile home to a plot of land in Silver City, Iowa. He had the real estate landscaped, a foundation poured, concrete blocks set, and steel girders aligned on the blocks. After removing the hitches and wheels, the mobile home was set on the foundation by a crane. It was then hooked together.

Since 1973 Van Sickle has substantially modified his residence. He welded it into a single unit, put a roof over the entire building, and joined the exterior together with siding. It is apparent there is no way the house could be disassembled without tearing it apart and no way it could be moved as one unit except by a house mover.

Luelia Jedlicka, now deceased, was the owner of the land upon which the mobile home was placed. In 1973 Van Sickle paid Jedlicka $500 as down payment on the purchase of the land. He made no other further payments and did not consider himself the owner of the real estate. Van Sickle believed the house belonged to Jedlicka. Van Sickle never received any notice to pay taxes and was told by Jedlicka that she paid them. He had been told by officers of Nebraska Federal Savings and Loan Association of Omaha, which held a security interest on the mobile home, that the house would become a part of Jedlicka's real estate after it was set on a foundation.

In 1977 plaintiff Ford contracted with Jedlicka to buy the land for $3,350. The mobile home, of course, was on it. The land had been appraised in 1977 at $3,000. The value of the house at that time is in dispute. In a 1978 deposition Van Sickle estimated the value to be $16,500. In 1979 Nebraska Federal claimed the actual value was $15,-000. At trial Van Sickle testified that the home and land were appraised in 1979 at $10,000.

The contract described the purchase real estate as lots one and two in block twenty-two, "together with all easements and servient estates appurtenant thereto ...." Clause seven included all "attached fixtures" as part of the real estate included in the sale.

In 1979 Nebraska Federal brought a replevin action against Van Sickle, Ford and Jedlicka. Ford paid Nebraska Federal $5,000 to settle the action. Ford testified:

> I appreciated the fact that they had a lien against these homes before they were placed on the property, and it was a legitimate claim, and, although it was a part of the real estate and was a home, there would have been quite a lengthy court suit action over it, and so I and the Savings and Loan came to an agreement and settled on the case out of court.

In 1982 defendant Venard attempted to enforce a 1976 judgment against Van Sickle by attaching and forcing execution on the home. Ford then brought this suit, claiming he owned Van Sickle's home. He asks for an injunction to restrain Venard from executing upon it.

II. The first question is whether the mobile home was a fixture included under the terms of the land contract between Jedlicka and Ford. We think it plainly was. Under our common law rule personal property becomes a fixture when:

(1) it is actually annexed to the realty, or to something appurtenant thereto;

(2) it is put to the same use as the realty with which it is connected; and

(3) the party making the annexation intends to make a permanent accession to the freehold.

*See Cornell College v. Crain,* 211 Iowa 1343, 1345, 235 N.W. 731, 732 (1931) (quoting from *Ottumwa Woolen Mill Co. v. Hawley,* 44 Iowa 57, 62 (1876)). The intention of the party annexing the improvement is the "paramount factor" in determining whether the improvement is a fixture. *Id.* "[P]hysical attachment of the structure to the soil or to an appurtenance thereto is not essential to make the structure a part of the realty." *Id.* On the other hand, a building which cannot be removed without destruction of a substantial part of its value becomes "almost unavoidably an integral part of the real estate . . . ." *Crawford-Fayram Lumber Co. v. Mann,* 203 Iowa 748, 753, 211 N.W. 225, 227 (1926).

Venard argues that Van Sickle's home does not pass the *Cornell College* test. He argues the home was not physically annexed to the realty and that Van Sickle never intended, for purposes outside the present lawsuit, for his home to be permanently attached to the freehold.

Ford maintains, on the other hand, that Van Sickle's home passes the *Cornell College* test. He relies on the facts that the home's tongues and wheels have been removed; it was set on a foundation and girders; it has been extensively remodeled into a single unit; and its removal would be expensive and damaging. He points out that the home was used as a homestead, which is the use for which the realty had been appropriated. He points to Nebraska Federal's advice to Van Sickle that his home would become the property of Jedlicka when set on her land.

We have found buildings to be fixtures in a number of cases. *See Cornell College,* 211 Iowa at 1344, 235 N.W. at 731 (granary, corn crib and hog house, although built on removable skids); *Crawford-Fayram,* 203 Iowa at 752, 211 N.W. at 227 (frame house with basement, plumbing, heating and sewage system); *Peoria Stone & Marble Works v. Sinclair,* 146 Iowa 56, 58, 124 N.W. 772, 772 (1910) (frame shop resting on stone and brick pillars deeply imbedded in soil); *Fletcher v. Kelly,* 88 Iowa 475, 487, 55 N.W. 474, 476 (1893) (three story brick veneered hotel built on foundation on top of ground, and three story frame addition over excavation, with plumbing and sewage system, platforms and large cistern). We found buildings were not fixtures in *Durband v. Noble,* 182 Iowa 1271, 1273, 166 N.W. 581, 581 (1918) (machine and feed sheds placed upon posts and "blocked up").

■ We are convinced the home became attached to the land. It could not be removed from its present location except in the sense that any permanent home could be. We hold that it has become an integral part of the real estate.

III. Iowa Code chapter 135D governs the licensing of mobile home parks and the taxation of mobile homes. Section 135D.26 provides:

> No mobile home shall be assessed for property tax nor be eligible for homestead tax credit or military service tax credit unless:
>
> 1. The mobile home owner intends to convert his mobile home to real estate and does so by:
>
> a. Attaching his mobile home to a permanent foundation.
>
> b. Destruction or modification of the vehicular frame rendering it impossible to reconvert the real property thus created to a mobile home.
>
> c. If a security interest is noted on the certificate of title [the owner must offer a mortgage to the holder of the security interest].

Iowa Code § 135D.26(2), of the same statute, provides that the assessor shall collect the title, registration, and license plates of the mobile home when it is properly converted.

There is no showing here of a transfer of the mobile home in accordance with this section. Defendant thinks section 135D.26 controls the question of when a mobile home becomes a fixture. He argues, "while designed to assess real estate tax liability, the statute should be interpreted to provide a comprehensive checklist of measures to be taken by any mobile home owner who

wishes his property considered realty for any and all purposes."

Plaintiff argues that section 135D.26 is merely a statutory scheme governing the proper taxation of mobile homes, and does not supersede the common law of fixtures. He contends it is not unusual for property to be deemed realty for one purpose and personalty for another.

■ We have often repeated the rule that "statutes will not be construed as taking away common law rights existing at the time of enactment unless that result is imperatively required." *Porter v. Porter,* 286 N.W.2d 649, 655 (Iowa 1979); *Jansen v. Harmon,* 164 N.W.2d 323, 328 (Iowa 1969).

Section 135D.26 was amended by 1974 Iowa Acts chapter 1249, section 9, to add the quoted provisions which protect a secured party's interest in a mobile home after it has been converted for tax purposes. Defendant would have us find that a further purpose of the section as amended is to supersede the common law of fixtures in every case involving a mobile home. We disagree.

■ We find nothing in the section to indicate the legislature intended to abrogate the common law. If it had so intended we cannot believe it would have done so with a provision which gives directions to tax authorities. *Cf. Sullivan v. Chicago & Northwestern Transportation Co.,* 326 N.W.2d 320, 323 (Iowa 1982) (if legislature intended sweeping changes in established principles of tort liability, it would not have done so in obscure subsection). Moreover, secured parties with interests in mobile homes are already protected by the uniform commercial code. *See* Iowa Code § 554.-9313 (priority of security interests in fixtures); Note, *Fixtures, Security Interests and the New Article 9,* 22 Drake L.Rev. 637 (1973).

The trial court was right in ordering the issuance of the permanent injunction.

AFFIRMED.