## United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 17-6025

_____

In re: Benjamin and Teresia Bennett

*Debtors.*

------------------------------

The Paddock, LLC

*Creditor – Appellant,*

v.

Benjamin M. Bennett,

*Debtor - Appellee*

Teresia R. Bennett

*Debtor – Appellee*

_____

Appeal from United States Bankruptcy Court
for the Northern District of Iowa

_____

Submitted:  February 23, 2018
Filed: April 19, 2018

_____

Before SALADINO, Chief Judge, SHODEEN and SANBERG, Bankruptcy Judges.

_____

SHODEEN, Bankruptcy Judge,

The Paddock, LLC appeals the bankruptcy court's[1] orders dated April 20, 2017, and September 5, 2017, confirming Benjamin and Teresia Bennett's chapter 13 plan. Because we agree with the bankruptcy court that the Bennetts can modify The Paddock, LLC's secured claim, we affirm.

## BACKGROUND

The Paddock is in the business of installing, renting and selling manufactured homes in a planned neighborhood that it owns. In 2003 the Bennetts rented a home previously installed by The Paddock at 222 Hackeny Court in Iowa City, Iowa. A few years later The Paddock financed the Bennetts' purchase of that home through an installment sale contract. At the same time the parties entered into a Ground Lease for the lot underneath the home. The combination of these two contracts require the Bennetts to make monthly payments to The Paddock for the purchase of the home as well as for a maintenance fee. Personal property taxes are paid by the Bennetts to the County Treasurer. The Paddock pays real estate taxes on the land where the home sits.

In 2016 the Bennetts filed a Chapter 13 bankruptcy petition. Their proposed plan treated The Paddock's claim as partially secured and partially unsecured as provided for under 11 U.S.C. §1322(b)(2). This code section states in relevant part: "[T]he plan may [m]odify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's*

_____

[1] The Honorable Thad J. Collins, Chief Judge, United States Bankruptcy Court for the Northern District of Iowa.

2

*principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." (emphasis added). The Paddock objected to this treatment arguing that it holds a security interest in real property that is the debtor's principal residence and is, therefore, protected from bifurcation of its claim under section 1322(b)(2). After conducting an evidentiary hearing, the bankruptcy court concluded that the Bennetts' home was not real property under Iowa law, overruled The Paddock's objection and confirmed the Bennetts' chapter 13 plan. This appeal followed. The Paddock presents two primary arguments. First, that the bankruptcy court committed error because the record as a whole demonstrates its intent to make the Bennetts' home a fixture. Second, that the bankruptcy court incorrectly applied the law.

## STANDARD OF REVIEW

This appeal involves a mixed question of law (the bankruptcy court's application of Iowa law regarding fixtures) and fact (the bankruptcy court's fact findings regarding the property and the intent of the parties). As the United States Supreme Court recently observed, "Mixed questions are not all alike." *U.S. Bank Nat. Ass'n v. Vill. at Lakeridge, LLC*, 200 L.Ed.2d 218, 222 (U.S. 2018). But, as applicable here, certain "mixed questions immerse courts in case-specific factual issues – compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address what we have . . . called 'multifarious, fleeting, special, narrow facts that utterly resist generalization.'" *Id.* at 227 (quoting Pierce v. Underwood, 487 U.S. 552, 561-562 (1988)). In such a situation, "appellate courts should usually review a decision with deference. *Id.* (citing Anderson v. Bessemer City, 470 U.S. 564, 574-576 (1985)). Accordingly, we review the bankruptcy court's determination that the manufactured home at issue is not a fixture under Iowa law with deference; that is, for clear error. Its conclusions of

law are reviewed *de novo*.   *Green Tree Servicing, LLC v. Coleman (In re Coleman),* 392 B.R. 767, 768 (BAP 8th Cir. 2008).


<u>DISCUSSION</u>

In order for the anti-modification provision of 1322(b)(2) to apply, The Paddock's claim "must *both* be secured only by an interest 'in real property' *and further,* that the real property must be the 'debtor's principal residence'" *In re Coleman,* 392 B.R. at 770.  The Paddock bears the burden of proof on these issues. *In re Snowden,* 546 B.R. 39, 44 (Bankr. E.D. KY 2016); *In re Hutsler*, No. 16-60275, 2016 Bankr. LEXIS 4361, at *10 (Bankr. W.D. Mo. Dec. 19, 2016); *In re Petrella*, 230 B.R. 829, 832 (Bankr. N.D. Ohio 1999).  Here, there is no dispute that the manufactured home is the principal residence of the debtors.  The only dispute is whether that manufactured home is real property or personal property.  That is an issue to be determined under the laws of the state of Iowa, which is where the home is located.  *In re Coleman,* 392 B.R. at 772.

Iowa common law recognizes that personal property may become a fixture and be considered real property.  See *Cornell Coll. v. Crain*, 211 Iowa 1343, 1345 (1931).  Determining whether an item has become a fixture is not a simple process.

> Fixtures are a species of property which are the dividing line between real and personal property, and to decide which side of the line certain property belongs is often a vexatious question.  When we compare a thing at the extremity of one class with a thing at the extremity of another the difference is obvious, but when we approach the point of division difficulty arises in discovering where the distinction should be drawn.

*Ottumwa Woolen Mill Co. v. Hawley,* 44 Iowa 57, 60 (1876).  Three factors are applied to evaluate whether a property is a fixture:  "(1) it is actually annexed to

4

the realty or to something appurtenant thereto; (2) it is put to the same use as the realty with which it is connected; and (3) the party making the annexation intends to make a permanent accession to the freehold." *Ford v. Venard*, 340 N.W.2d 270, 271 (Iowa 1983) (citing *Cornell Coll.*, 211 Iowa at 1345). The third factor – the intention of the party making the annexation – is most important to whether an improvement is a fixture. *Cornell Coll.*, 211 Iowa at 1345.

At the hearing conducted by the bankruptcy court an employee of The Paddock's management company testified that any home installed in the community is placed on a full concrete foundation.[2] As part of this process she further explained that the wheels and axles are removed but the underlying structure used to attach these transportation items likely remained in place because there is no reason to remove it. Based upon the timing of her employment this witness was not present at the time the Bennetts' home was installed and she did not inspected the foundation under their home. The Bennetts contend that their home is not installed on a permanent foundation. Mr. Bennett testified that there is no cement foundation behind the plastic skirting that surrounds the home. There is a crawl space underneath the home along with piers and blocks that require maintenance to address the sinking and shifting of the home in order to keep it level.

---

[2] After the evidentiary hearing, The Paddock asked the bankruptcy court to take judicial notice of a "Guide to Foundation and Support Systems for Manufactured Homes" ("Guide") from the United States Department of Housing and Urban Development Office of Policy Development and Research. The Bennetts filed a Motion to Strike which was denied. The record before us on appeal contains no information that would permit a conclusion that The Paddock met the requirements under Federal Rule of Evidence 201 to permit consideration of the documents; that the information somehow proves its intent; or that the Bennetts' home was placed on a permanent foundation. USCS Fed Rules Evid R 201. This document was not offered or admitted as exhibit at the hearing; the bankruptcy court's ruling does not reference it; and the Guide was not designated as part of the record on appeal. For these reasons we do not consider the contents of that Guide for purposes of this appeal.

Under Iowa law

> [e]mphasis has also been given to the manner in which the structure is attached to the soil, if at all. We said in *O'Bryon v. Weatherly* and other cases cited supra that the method of attachment is of little controlling importance, although, by force of gravity alone, if the structure is intended to be and is properly a part of the realty, it becomes such. Therefore a physical attachment of the structure to the soil or to an appurtenance thereto is not essential to make the structure a part of the realty. The method of attachment may, however, and, under some circumstances does, quite conclusively establish the intention.

*Cornell Coll.*, 211 Iowa at 1345. The bankruptcy court identified specific facts that have been evaluated by Iowa courts to determine whether a structure is a fixture. Due to Mr. Bennett's personal knowledge of the home, and the manner in which it was installed, the bankruptcy court specifically found his testimony to be more credible than the testimony of The Paddock's representative. We see no reason to disturb that finding. *Wright v. St. Vincent Health Sys.,* 730 F.3d 732, 739 (8th Cir. 2013) (such a finding is given deference and not easily challenged on appeal).

In further proof of its intent The Paddock points to language contained in the documents executed by the parties, specifically Section III of the Lease which states: "[t]he Land Owner and Resident agree that the Home shall be installed as a permanent improvement and fixture." The Bennetts argue that the documents are not dispositive of The Paddock's intent for a variety of reasons. The bankruptcy court agreed and enumerated a number of facts that support its conclusion that the parties did not intend to make the home a permanent accession to the real estate.

The installment sales contract provides that upon full payment of the purchase price a bill of sale (which is how personal property title is passed) will be issued to the Bennetts for the home. The Lease agreement states: "The Home and

any other improvements covered under the Financing Documents may not be removed from the Home Site without the prior written permission of the Secured Lender," but that prohibition is limited. Once the secured loan is paid or refinanced, nothing in the documents prohibits removal of the home. Further, while the Paddock points to the length of the Lease as evidence of its intent to treat the manufactured home as a fixture of the underlying realty, it is clear that the Lease can be terminated on 60 days notice. Other than removal while money is owed to The Paddock, the documents contain no other restrictions that pose any impediments to removing the home from the community.

The Paddock argues that the bankruptcy court incorrectly relied upon *In re Drahn* in reaching a determination that a manufactured home is personal property because its taxes are characterized and assessed as such. *Schnittjer v. Burke Constr. Co. (In re Drahn),* 405 B.R. 470, 475 (Bank N.D. Iowa 2009). The significance of this case in the bankruptcy court's ruling is overstated. *In re Drahn* mainly stands for the proposition that an installment sale contract for the purchase of a manufactured home is not an executory contract that must be assumed or rejected pursuant to 11 U.S.C. §365. *Id.* at 477. Iowa law recognizes that a manufactured home may be taxed as either personal property or as real property under certain circumstances. Iowa Code § 435.26[3]; Iowa Code § 435.2(2).[4] The bankruptcy court recognized that even if *In re Drahn* was not considered, the Bennett's home would still qualify as personal property under Iowa law. See also *Wallingford v. Green Tree Servicing, LLC (In re Wallingford),* 524 F. App'x 205,

---

[3]
 "A mobile home or manufactured home which is located outside a manufactured home community or mobile home park shall be converted to real estate by being placed on a permanent foundation and shall be assessed for real estate taxes."

[4] "If a manufactured home is placed in a manufactured home community or a mobile home park, the home must be titled and is subject to the manufactured or mobile home square foot tax. If a manufactured home is placed outside a manufactured home community or a mobile home park, the home must be titled and is to be assessed and taxed as real estate."

7

208 (6th Cir. 2013) (It is proper for appellate courts to look to state law when determining what qualifies as real property).

The Paddock also argues that the bankruptcy court's reliance on *In re Coleman* is inapposite because Iowa's common law contains no requirement that a manufactured home be installed on a permanent foundation or that it be placed on real estate owned by the manufactured home owner. *In re Coleman,* 392 B.R. at 722. *In re Coleman* applied Missouri law which, at that time, treated a manufactured home as personal property until converted to real property according to Mo. Rev. Stat § 700.111. *Id.* That case ultimately determined that a mobile home was personal property where it could be jacked up, attached to wheels and moved. *Id.* at 773. Missouri has since changed its law. The Paddock appears to suggest that because the Missouri law has been revised this case no longer has any relevancy under Iowa law. This argument is not persuasive. When *In re Coleman* was decided, Missouri's law was similar to Iowa's law related to whether manufactured homes were personal or real property. The bankruptcy court explicitly noted that it applied *In re Coleman* to the facts contained in the record under Iowa law. Because Iowa's law has not changed, the analysis in *In re Coleman* remains germane.

## CONCLUSION

Based upon our review the bankruptcy court's findings are not clearly erroneous and it properly applied the law. Accordingly, the bankruptcy court's order is AFFIRMED.

---