# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2098

_____

In re: Benjamin Matthew Bennett; Teresia Robin Bennett

*Debtors*

------------------------------

The Paddock, LLC

*Appellant*

v.

Benjamin Matthew Bennett; Teresia Robin Bennett

*Appellees*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: November 14, 2018
Filed: February 28, 2019

_____

Before BENTON, BEAM, and ERICKSON, Circuit Judges.

_____

BENTON, Circuit Judge.

Benjamin Matthew Bennett and Teresia Robin Bennett filed for Chapter 13 bankruptcy. Their plan proposed that The Paddock's secured claim in their manufactured home would be bifurcated into secured and unsecured parts. The Paddock objected. The bankruptcy court[1] overruled the objection. It held that 11 U.S.C. § 1322(b)(2)'s anti-modification provision did not apply to The Paddock's claim. *In re Bennett*, 2017 WL 1417221 (Bankr. N.D. Iowa Apr. 20, 2017). The Paddock appealed. The Bankruptcy Appellate Panel (BAP) affirmed. *In re Bennett*, 584 B.R. 15 (B.A.P. 8th Cir. 2018). The Paddock again appeals. Having jurisdiction under 28 U.S.C. § 158(d)(1), this court affirms.

I.

The Paddock LLC installs, rents, and sells manufactured homes in a planned neighborhood it owns. The Bennetts rented and later purchased a manufactured home, financed by monthly payments to The Paddock. At the time of purchase, they also agreed, for the lot under the home, to a 990-year Ground Lease (99-year terms with 9 renewal options). By the lease, the Bennetts pay a monthly association fee. They pay personal-property taxes for the home; The Paddock pays real-property taxes for the lot.

The Bennetts filed for Chapter 13 bankruptcy. Their plan proposed that The Paddock's claim—secured by a security interest only in their manufactured home—would be treated as partly secured and partly unsecured under 11 U.S.C. § 506(a)(1). The Paddock objected, arguing that an anti-modification provision bars bifurcation because the manufactured home is real property. This provision prohibits a plan from modifying the rights of creditors who have "a claim secured only by a security interest in real property that is the debtor's principal residence." **11 U.S.C.**

_____

[1]The Honorable Thad J. Collins, Chief Judge, United States Bankruptcy Court for the Northern District of Iowa.

**§ 1322(b)(2)**. After an evidentiary hearing, the bankruptcy court found that, under Iowa law, the home was personal—not real—property. The court overruled The Paddock's objection and confirmed the plan. The Paddock appealed to the BAP, which reviewed for clear error and affirmed.

The Paddock appeals, arguing the bankruptcy court erred in finding the manufactured home was personal property under Iowa law.

## II.

"In an appeal from the BAP, this court independently reviews the bankruptcy court's decision, applying the same standard of review as the BAP." *In re Terry*, 687 F.3d 961, 963 (8th Cir. 2012). Factual findings are reviewed for clear error and conclusions of law de novo. *Id.* This appeal presents a mixed question of law and fact: whether the bankruptcy court's factual findings meet Iowa's legal test for fixtures. Because this question entails primarily factual work, its resolution is reviewed for clear error. *See U.S. Bank N.A. v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018).

The Paddock has the burden to prove that its claim is within § 1322(b)(2)'s anti-modification exception. *See Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1226 (8th Cir. 1987) (creditor objecting to Chapter 13 plan bears initial burden to produce satisfactory evidence supporting its objection). *See also In re Jordan*, 403 B.R. 339, 351 (Bankr. W.D. Pa. 2009) (collecting cases).

The Paddock's claim is secured by a security interest only in the Bennetts' manufactured home, which is their principal residence. The issue is whether the home is personal or real property. The Bankruptcy Code does not resolve this issue. "In the absence of a controlling federal rule, we generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state

law,' since such '[p]roperty interests are created and defined by state law.'" ***Nobelman v. Am. Sav. Bank***, 508 U.S. 324, 329 (1993) (alteration in original), *quoting* ***Butner v. United States***, 440 U.S. 48, 54–55 (1979). *See* ***In re WEB2B Payment Sols., Inc.***, 815 F.3d 400, 405 (8th Cir. 2016) ("The nature and extent of the debtor's interest in property are determined by state law."). Here, the issue is determined by Iowa law. *See* ***In re Reinhardt***, 563 F.3d 558, 563–64 (6th Cir. 2009) (using state law to determine whether mobile home was personal or real property under § 1322(b)(2)); ***In re Ennis***, 558 F.3d 343, 345–46 (4th Cir. 2009) (same).

Under Iowa common law, personal property is a fixture—thus real property—when: "(1) it is actually annexed to the realty, or to something appurtenant thereto; (2) it is put to the same use as the realty with which it is connected; and (3) the party making the annexation intends to make a permanent accession to the freehold." ***Ford v. Venard***, 340 N.W.2d 270, 271 (Iowa 1983), *citing* ***Cornell College v. Crain***, 235 N.W. 731, 732 (Iowa 1931). The first two are "mainly important in determining the intention of the party making the annexation," which is "the controlling consideration in determining the whole question." ***Speer v. Donald***, 207 N.W. 581, 582 (Iowa 1926), *quoting* ***Ottumwa Woolen Mill Co. v. Hawley***, 44 Iowa 57, 63 (1876). "[T]he intention is paramount and really the determining factor." ***Cornell College***, 235 N.W. at 732. A party's intention is a factual question. ***Speer***, 207 N.W. at 582 (intention is "implied from all the facts," *quoting* ***Fehleisen v. Quinn***, 165 N.W. 213, 215 (1917)). *See* ***Langer v. Iowa Beef Packers, Inc.***, 420 F.2d 365, 367 & n.4 (8th Cir. 1970) (collecting cases).

The bankruptcy court specifically found that "the method of attachment does not indicate an intent to make the home a permanent accession to the property," and:

> The Court finds—especially in light of the fact that Debtors own the home while The Paddock owns the lot and charges Debtors a monthly fee under the lease—that the [Ground Lease] does not clearly establish the intent to make the home a permanent accession to the real estate.

These findings are not clearly erroneous.

The bankruptcy court heard competing testimony about the home's attachment to the ground. Mr. Bennett testified: he had looked behind the skirting that covers the space between the home and ground; the home is placed on pier pads and concrete blocks, not a concrete foundation; and, he has raised a pier pad several times to level the home due to ground sinkage. Sarah Slaymaker—The Paddock's property manager (beginning two years after the home's installation)—testified: there is a full concrete foundation behind the skirting[2] (based on other nearby homes having a concrete foundation); the wheels and axles used to install the home were removed but the underlying structure to which they were attached was probably still there; and, moving the home from its concrete foundation would damage both the home and the lot.

The bankruptcy court found Bennett more credible than Slaymaker because of his first-hand knowledge. The Paddock does not challenge this credibility determination, which there is no reason to disturb. *See **Dollar v. Smithway Motor Xpress, Inc.**,* 710 F.3d 798, 806 (8th Cir. 2013) ("A district court's credibility determinations in a bench trial . . . are virtually unassailable on appeal."). Bennett's testimony sufficiently supports the bankruptcy court's finding that "the home sits on piers and blocks, not on a concrete foundation."

For the first time in a footnote to its reply brief, The Paddock argues that a federal regulation "renders suspect" the bankruptcy court's finding "that the piers are not deeply embedded into the ground." *See* **24 C.F.R. § 3285.312(b)(1)** (conventional footings for manufactured homes "must be placed below the frost line depth for the site . . . ."). This court generally does not consider arguments raised for the first time in a reply brief. ***Cutcliff v. Reuter***, 791 F.3d 875, 883 n.3 (8th Cir.

_____

[2]The parties agree the skirting is not concrete. Slaymaker testified that it "looks like plastic." Bennett testified that it was "[a] faux—fake veneer skirting."

2015). Even if this court considered the argument, the factual record supports the bankruptcy court's finding that "the home is more like a structure on blocks than a structure deeply embedded into the ground." The court found that the home does not have a foundation. Bennett testified that one pier pad repeatedly sunk into the ground. The Paddock did not present any evidence about the piers being deeply embedded. Its reliance on a federal regulation is irrelevant. The bankruptcy court's structure-on-blocks finding was not clearly erroneous.

The Paddock also challenges the bankruptcy court's finding that the home "could be removed from the property and would not lose substantial value if it was removed." However, this finding is supported by the finding that the home is like a structure on blocks, and by Slaymaker's testimony that the underlying structure used to transport it was probably still there. No direct evidence shows that removing the home would be damaging. Slaymaker's testimony about damage was based on her (uncredited) assumption that the home was attached to a concrete foundation.[3] The photos in evidence, discussed during Slaymaker's testimony, do not show how the home is attached to the ground or what is required to move it. The bankruptcy court's no-loss-from-removal finding was not clearly erroneous, as this court is not "left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985), *quoting United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). *See In re Hixon*, 387 F.3d 695, 700 (8th Cir. 2004) ("[E]ven greater deference to the bankruptcy court's factual findings is necessary where . . . the findings call for an assessment of witness credibility and where the record contains no contradictory documents or objective evidence.").

---

[3]The dissent relies on this (uncredited) testimony to conclude that the home has a concrete foundation and its removal would cause difficulty or destruction. Slaymaker's testimony was not uncontroverted. Bennett repeatedly testified that the home was not sitting on a concrete foundation. The bankruptcy court explicitly found, after weighing the competing testimony and making a credibility determination, that the foundation Slaymaker described (and said would be damaged) was not there.

Based on the factual findings—the manufactured home sits on piers and blocks, is more like a structure on blocks than one deeply embedded in the ground, and can be removed without losing substantial value—the bankruptcy court's conclusion that "the method of attachment does not indicate an intent to make the home a permanent accession to the property" is not clearly erroneous. *Compare* **Durband v. Noble**, 166 N.W. 581, 581 (Iowa 1918) (buildings were not fixtures where they were "placed upon posts and blocked up," and could be removed without "difficulty" or "injury to the premises"), *with* **Ford**, 340 N.W.2d at 272 (mobile home was a fixture where party making the accession "substantially modified" it, and "[i]t could not be removed from its present location except in the sense that any permanent home could be"), *and* **Peoria Stone & Marble Works v. Sinclair**, 124 N.W. 772, 772–73 (Iowa 1910) (building was real property where it rested on "stone and brick pillars deeply imbedded in the soil").

The Paddock argues the Ground Lease shows its intent to make the home a permanent accession. The lease says that the home is "permanently affixed," has "permanent footings," and will "be installed as a permanent improvement and fixture." However, as The Paddock admits, the lease also permits the home's removal from the property. Before the Bennetts' loan is paid or refinanced, the lease requires The Paddock's permission to remove the home. If the loan is paid, title to the home passes to the Bennetts by a bill of sale and they may remove it. The Paddock (and dissent) emphasize that the 990-year lease term shows an intent to treat the home as a fixture. But, the lease makes clear that The Paddock continues to own the lot, and allows termination on 60-days' notice. The bankruptcy court's view of the evidence, that the Ground Lease does not establish an intent to make the home a permanent accession, is permissible, and not clearly erroneous. *See* **Anderson**, 470 U.S. at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

The bankruptcy court's findings distinguish this case from *In re Green*, 436 B.R. 91 (Bankr. S.D. Ill. 2010). There, a mobile home was held to be a fixture under

-7-

a test like Iowa's. *See In re Green*, 436 B.R. at 98. That bankruptcy court found significant that the debtor "testified that, at the time he signed the mortgage [for the mobile home and underlying land], he intended to permanently affix the mobile home to the real estate." *Id.* Here, the bankruptcy court, based on credibility determinations, found nothing in the record showed The Paddock's intent to make the manufactured home a fixture.[4]

The bankruptcy court's finding—the Bennetts' home did not meet Iowa's fixture test and is thus not real property—is not clearly erroneous.

\* \* \* \* \* \* \*

The judgment is affirmed.

BEAM, Circuit Judge, dissenting.

The evidence establishes that The Paddock, LLC, as landowner, by law, succeeded in subdividing real estate in Johnson County, Iowa, as The Paddock at Saddlebrook. This established a community of single-family residential lots and blocks available for sale to qualified home buyers and builders. The evidence further establishes that in 2003, The Paddock delivered a single-family residential structure

---

[4]The Paddock criticizes the bankruptcy court for relying on *In re Coleman*, 392 B.R. 767 (B.A.P. 8th Cir. 2008). That Missouri case is not persuasive here. Missouri follows a statute, not common law, to determine whether a manufactured home is personal or real property. *See In re Estate of Parker*, 25 S.W.3d 611, 616 (Mo. App. 2000) (holding § 700.111 RSMo abrogated Missouri's "common law elements of conversion of a mobile home to real property"). Regardless, Missouri's statute is not similar to Iowa's common law of fixtures. *Compare Coleman*, 392 B.R. at 772–73, *applying* **§ 700.111 RSMo 2005**, *with Ford*, 340 N.W.2d at 271–73. In any event, this court "may affirm the bankruptcy court on any ground supported by the record." *In re Acceptance Ins. Cos.*, 567 F.3d 369, 376 (8th Cir. 2009).

for use and occupancy as a private home at 222 Hackney Court in The Paddock at Saddlebrook. Although the evidence is somewhat opaque, it appears this structure had, at least in substantial part, been prefabricated at another location and transported over public roadways using two-wheels or two sets of wheels which wheels were detached upon delivery and removed from the structure for its use at The Paddock at Saddlebrook. Indeed, there is no evidence that these wheels, or any similar wheels, were ever again employed within a reasonable proximity to the Bennetts' home at Hackney Court. The Bennetts rented the home from 2003 until April 2007, at which time they purchased the home from The Paddock. The evidence indicates that the sale price for the new residence was $111,155 including the cost of a conveyance of a right of real property possessory interest in the Hackney Court lot. While the conveyance was mislabeled "lease," it actually transfers to the Bennetts a fee simple absolute ownership interest in their building lot, "subject to a condition subsequent." See Black's Law Dictionary at 734 (10th ed. 2014).

According to the bankruptcy court's memorandum and order, Mr. Bennett testified that the home, as delivered, was on "piers and blocks."[5] Such piers, by definition, are "a solid support designed to sustain vertical pressure, in particular." New Oxford American Dictionary at 1325 (3d ed. 2010). Further, the record indicates that the foundation, as Sarah Slaymaker, The Paddock's property manager testified numerous times, is cement or concrete (which terms the parties and the attorneys seem to use interchangeably). Here, although we acknowledge that Slaymaker was heard to state on redirect examination that the "skirting" covering the concrete or cement foundation supporting the Bennetts' residence "looked like plastic," Slaymaker never retracted her other testimony that the residence had a cement foundation; that removing the foundational structure would "damage the home" and would "damage or destroy the foundation." And, of equal importance, that no one had ever "moved a home out of The Paddock" before. This particular

_____

[5]Bennett actually called them "concrete blocks" in his testimony, which seems an important distinction from simply "blocks" as stated by the bankruptcy court. J.A. 105.

testimony–about damaging the house, the foundation, and that it could not be moved by anyone other than a "house mover" was uncontroverted. Thus, the bankruptcy court was clearly erroneous in finding that only Bennett's testimony was credible and Slaymaker's was not credible. There can be no argument that the 222 Hackney Court residence was *not* designed to be a permanent abode for the Bennetts' long and continuing residence at that location. Or, that it was designed to be a quasi-permanent piece of personal property, and as noted below, Iowa law bears this out.

While the majority opinion sets forth the correct test under Iowa law to determine whether personal property has become a fixture, and thus, real property, it misapplied that test and comes to the wrong conclusion. In doing so, the majority gives too much deference to the bankruptcy court's clearly erroneous factual conclusions. The universally stated test for whether a court's (including a bankruptcy court) fact finding is "clearly erroneous" is when "although there is evidence to support it . . . the reviewing court is left with the definite and firm conviction that a mistake has been committed." In re Kaelin, 308 F.3d 885, 889 (8th Cir. 2002) (alteration in original) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)). Because I believe the outcome of the test at issue indicates that the structure in question is real property, I am left with the definite and firm conviction that a mistake has been made, and I dissent.

Here, there is no dispute that the manufactured home is the principal residence of the Bennetts. The only dispute is over whether the manufactured home is real property or personal property. That is an issue to be determined under the laws of the state of Iowa, which is where the home is located, and pursuant to the terms of the contract for purchase. The two key cases are Ford v. Venard, 340 N.W.2d 270 (Iowa 1983), and Cornell Coll. v. Crain, 235 N.W. 731 (Iowa 1931).

In Ford, the court considered the question of whether a structure that was once a mobile home was real or personal property. The court noted that Iowa courts, as most notably and clearly set forth by Cornell, have developed a test to decide the

-10-

vexatious question of whether a structure is personal property or whether it has become a fixture and therefore real property. "[P]ersonal property becomes a fixture when: (1) it is actually annexed to the realty, or to something appurtenant thereto; (2) it is put to the same use as the realty with which it is connected; and (3) the party making the annexation intends to make a permanent accession to the freehold." Ford, 340 N.W.2d at 271 (citing Cornell, 235 N.W. at 732). "The intention of the party annexing the improvement is the 'paramount factor' in determining whether the improvement is a fixture." Id. at 272 (quotation omitted). In Ford, the Iowa Supreme Court ultimately concluded that the mobile home "plainly was" a fixture, because "[i]t could not be removed from its present location except in the sense that any permanent home could be. . . . [and] it has become an integral part of the real estate." Id. at 271-72. In Ford all the elements of the various common law and statutory tests were met, and the home was deemed to be a real estate fixture. Id. at 272-73. This is because the structure was firmly attached to the realty and had been modified in such a way that removal would essentially destroy the home unless a professional "house mover" was employed; the homeowner believed it was part of the realty; and it was on a separate parcel of land, not in a conventional motor home park. Id. at 271-72.

Our task is to apply the three-part Ford test in the instant case. The first prong is whether the structure is actually annexed to the realty or to something appurtenant thereto. It seems rather clear that the structure in this case is annexed to the realty, as the wheels and axles were removed once it was placed on the foundation. Like the structure in Ford, the home could not be moved without a professional home mover. The Bennetts certainly could not pull their pickup up to the structure and drive away with it once their debt is paid off. Slaymaker testified that the home would have to be detached from the cement foundation, that removing the home would destroy the foundation and damage the home, and that no one had ever removed a home from The Paddock. Thus, this first factor is in favor of The Paddock.

The second prong, whether the home is put to the same use as realty, also favors The Paddock. Although the real estate taxes are purportedly paid by The

Paddock because it "owns" the underlying land, the land is subject to a 990-year real property interest lease. Unless Methuselah[6] lived at The Paddock, the length of the lease effectively gives the residents of the structure ownership of the underlying land. And, the Bennetts certainly use the structure as a "home." So this prong is undeniably in favor of The Paddock.

The third prong–whether the party who annexed the property intended to make it a part of the real property–is also in The Paddock's favor. Although there is no basement, the structure is sitting on a cement or concrete foundation. As noted above, the foundation is attached to the ground, and both it and the house would be destroyed if the home was removed. This is key. See Ford, 340 N.W.2d at 272 ("[A] building which cannot be removed without destruction of a substantial part of its value becomes almost unavoidably an integral part of the real estate.") (quotation omitted). The photographs in the record indicate that these are not mobile home trailers. They are modular homes. In Iowa, all of these things qualify the structure in question as a real property fixture. See Peoria Stone & Marble Works v. Sinclair, 124 N.W. 772, 772–73 (Iowa 1910) (holding that a frame shop resting on stone and brick pillars deeply embedded into the soil was found to be real property); Durband v. Noble, 166 N.W. 581, 581 (Iowa 1918) (holding that where the buildings were "respectively placed upon posts and blocked up" they were not real property because the building could be "removed from the land without difficulty or trouble, and the ground restored to its former condition" (quotation omitted)). The cement or concrete foundation (or blocks and piers or whatever we want to call them) here is embedded in the soil, and the building could not be removed from the land without difficulty or destruction, as Slaymaker's uncontroverted testimony indicates. The Paddock did not intend for the structures to be moved, but instead made them part of the real property.

The test for real property under Iowa law clearly favors The Paddock's contention that the structure in question was real property. Accordingly, I dissent.

_____

[6]"Altogether Methuselah lived a total of 969 years, and then he died." Genesis 5:27 (New International Version).