BEAM, Circuit Judge, dissenting.
The evidence establishes that The Paddock, LLC, as landowner, by law, succeeded in subdividing real estate in Johnson County, Iowa, as The Paddock at Saddlebrook. This established a community of single-family residential lots and blocks available for sale to qualified home buyers and builders. The evidence further establishes that in 2003, The Paddock delivered a single-family residential structure for use and occupancy as a private home at 222 Hackney Court in The Paddock at Saddlebrook. Although the evidence is somewhat opaque, it appears this structure had, at least in substantial part, been prefabricated at another location and transported over public roadways using two-wheels or two sets of wheels which wheels were detached upon delivery and removed from the structure for its use at The Paddock at Saddlebrook. Indeed, there is no evidence that these wheels, or any similar wheels, were ever again employed within a reasonable proximity to the Bennetts' home at Hackney Court. The Bennetts rented the home from 2003 until April 2007, at which time they purchased the home from The Paddock. The evidence indicates that the sale price for the new residence was $111,155 including the cost of a conveyance of a right of real property possessory interest in the Hackney Court lot. While the conveyance was mislabeled "lease," it actually transfers to the Bennetts a fee simple absolute ownership interest in their building lot, "subject to a condition subsequent." See Black's Law Dictionary at 734 (10th ed. 2014).
According to the bankruptcy court's memorandum and order, Mr. Bennett testified that the home, as delivered, was on *683 "piers and blocks."[5] Such piers, by definition, are "a solid support designed to sustain vertical pressure, in particular." New Oxford American Dictionary at 1325 (3d ed. 2010). Further, the record indicates that the foundation, as Sarah Slaymaker, The Paddock's property manager testified numerous times, is cement or concrete (which terms the parties and the attorneys seem to use interchangeably). Here, although we acknowledge that Slaymaker was heard to state on redirect examination that the "skirting" covering the concrete or cement foundation supporting the Bennetts' residence "looked like plastic," Slaymaker never retracted her other testimony that the residence had a cement foundation; that removing the foundational structure would "damage the home" and would "damage or destroy the foundation." And, of equal importance, that no one had ever "moved a home out of The Paddock" before. This particular testimony-about damaging the house, the foundation, and that it could not be moved by anyone other than a "house mover" was uncontroverted. Thus, the bankruptcy court was clearly erroneous in finding that only Bennett's testimony was credible and Slaymaker's was not credible. There can be no argument that the 222 Hackney Court residence was not designed to be a permanent abode for the Bennetts' long and continuing residence at that location. Or, that it was designed to be a quasi-permanent piece of personal property, and as noted below, Iowa law bears this out.
While the majority opinion sets forth the correct test under Iowa law to determine whether personal property has become a fixture, and thus, real property, it misapplied that test and comes to the wrong conclusion. In doing so, the majority gives too much deference to the bankruptcy court's clearly erroneous factual conclusions. The universally stated test for whether a court's (including a bankruptcy court) fact finding is "clearly erroneous" is when "although there is evidence to support it ... the reviewing court is left with the definite and firm conviction that a mistake has been committed." In re Kaelin, 308 F.3d 885, 889 (8th Cir. 2002) (alteration in original) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ). Because I believe the outcome of the test at issue indicates that the structure in question is real property, I am left with the definite and firm conviction that a mistake has been made, and I dissent.
Here, there is no dispute that the manufactured home is the principal residence of the Bennetts. The only dispute is over whether the manufactured home is real property or personal property. That is an issue to be determined under the laws of the state of Iowa, which is where the home is located, and pursuant to the terms of the contract for purchase. The two key cases are Ford v. Venard, 340 N.W.2d 270 (Iowa 1983), and Cornell Coll. v. Crain, 211 Iowa 1343, 235 N.W. 731 (1931).
In Ford, the court considered the question of whether a structure that was once a mobile home was real or personal property. The court noted that Iowa courts, as most notably and clearly set forth by Cornell, have developed a test to decide the vexatious question of whether a structure is personal property or whether it has become a fixture and therefore real property. "[P]ersonal property becomes a fixture when: (1) it is actually annexed to the realty, or to something appurtenant thereto; (2) it is put to the same use as the realty with which it is connected; and (3) the party making the annexation intends *684 to make a permanent accession to the freehold." Ford, 340 N.W.2d at 271 (citing Cornell, 235 N.W. at 732 ). "The intention of the party annexing the improvement is the 'paramount factor' in determining whether the improvement is a fixture." Id. at 272 (quotation omitted). In Ford, the Iowa Supreme Court ultimately concluded that the mobile home "plainly was" a fixture, because "[i]t could not be removed from its present location except in the sense that any permanent home could be. ... [and] it has become an integral part of the real estate." Id. at 271-72. In Ford all the elements of the various common law and statutory tests were met, and the home was deemed to be a real estate fixture. Id. at 272-73. This is because the structure was firmly attached to the realty and had been modified in such a way that removal would essentially destroy the home unless a professional "house mover" was employed; the homeowner believed it was part of the realty; and it was on a separate parcel of land, not in a conventional motor home park. Id. at 271-72.
Our task is to apply the three-part Ford test in the instant case. The first prong is whether the structure is actually annexed to the realty or to something appurtenant thereto. It seems rather clear that the structure in this case is annexed to the realty, as the wheels and axles were removed once it was placed on the foundation. Like the structure in Ford, the home could not be moved without a professional home mover. The Bennetts certainly could not pull their pickup up to the structure and drive away with it once their debt is paid off. Slaymaker testified that the home would have to be detached from the cement foundation, that removing the home would destroy the foundation and damage the home, and that no one had ever removed a home from The Paddock. Thus, this first factor is in favor of The Paddock.
The second prong, whether the home is put to the same use as realty, also favors The Paddock. Although the real estate taxes are purportedly paid by The Paddock because it "owns" the underlying land, the land is subject to a 990-year real property interest lease. Unless Methuselah[6] lived at The Paddock, the length of the lease effectively gives the residents of the structure ownership of the underlying land. And, the Bennetts certainly use the structure as a "home." So this prong is undeniably in favor of The Paddock.
The third prong-whether the party who annexed the property intended to make it a part of the real property-is also in The Paddock's favor. Although there is no basement, the structure is sitting on a cement or concrete foundation. As noted above, the foundation is attached to the ground, and both it and the house would be destroyed if the home was removed. This is key. See Ford, 340 N.W.2d at 272 ("[A] building which cannot be removed without destruction of a substantial part of its value becomes almost unavoidably an integral part of the real estate.") (quotation omitted). The photographs in the record indicate that these are not mobile home trailers. They are modular homes. In Iowa, all of these things qualify the structure in question as a real property fixture. See Peoria Stone & Marble Works v. Sinclair, 146 Iowa 56, 124 N.W. 772, 772-73 (1910) (holding that a frame shop resting on stone and brick pillars deeply embedded into the soil was found to be real property); Durband v. Noble, 182 Iowa 1271, 166 N.W. 581, 581 (1918) (holding that where the buildings were "respectively *685 placed upon posts and blocked up" they were not real property because the building could be "removed from the land without difficulty or trouble, and the ground restored to its former condition" (quotation omitted) ). The cement or concrete foundation (or blocks and piers or whatever we want to call them) here is embedded in the soil, and the building could not be removed from the land without difficulty or destruction, as Slaymaker's uncontroverted testimony indicates. The Paddock did not intend for the structures to be moved, but instead made them part of the real property.
The test for real property under Iowa law clearly favors The Paddock's contention that the structure in question was real property. Accordingly, I dissent.

Bennett actually called them "concrete blocks" in his testimony, which seems an important distinction from simply "blocks" as stated by the bankruptcy court. J.A. 105.

"Altogether Methuselah lived a total of 969 years, and then he died." Genesis 5:27 (New International Version).